NO ORAL ARGUMENT SET
No. 13-1172

_____

In the
**United States Court of Appeals
For The District of Columbia**

_____

**FRED WEAVER, JR. and
OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC.,**

*Petitioners,*

v.

**ANNE S. FERRO, In her official capacity as Administrator Of Federal Motor
Carrier Administration, FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION, UNITED STATES DEPARTMENT OF
TRANSPORTATION, and RAYMOND H. LaHOOD, in his official capacity
as Secretary of the Department of Transportation,**

*Respondents.*

_____

PETITION FOR REVIEW OF FINAL AGENCY ACTION
BY THE FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

# PETITIONERS' BRIEF

_____

**Paul D. Cullen, Sr.**
(*pdc@cullenlaw.com*)
**David A. Cohen**
**Joyce E. Mayers**
**Paul D. Cullen, Jr.**
**The Cullen Law Firm, PLLC**
**1101 30th Street, N.W., Suite 300**
**Washington, D.C., 20007**
**202-944-8600**
*Counsel for Petitioners*

**August 23, 2013**

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

**A.     PARTIES**

The parties appearing thus far in this proceeding are:

| | |
|---|---|
| **Petitioners:** | Fred Weaver, Jr.<br>600 W. National Ave., Ste. 5<br>West Terre Haute, IN 47885 |
| | Owner-Operator Independent Drivers Association, Inc.<br>Drivers Association, Inc.<br>P.O. Box 1000<br>1 NW OOIDA Drive<br>Grain Valley, Missouri 64029 |
| **Respondents:** | Anne S. Ferro, Administrator<br>Federal Motor Carrier Safety Administration<br>1200 New Jersey Avenue S.E.,<br>Suite W60-300<br>Washington, DC 20590 |
| | United States Department of Transportation<br>1200 New Jersey Avenue S.E.,<br>Washington, DC 20590 |
| | Federal Motor Carrier Safety Administration<br>1200 New Jersey Avenue S.E.,<br>Washington, DC 20590 |
| | Raymond H. LaHood, Secretary<br>United States Department of Transportation<br>1200 New Jersey Avenue S.E.,<br>Washington, DC 20590 |

i

A.    **RULINGS UNDER REVIEW**

Petitioner Fred Weaver was issued a citation by the Montana Highway

Patrol alleging that Weaver committed the offense of "Fail to Obey Direction to be

Weighed," a misdemeanor.  Contemporaneous with Weaver's citation, the State of

Montana transmitted the alleged violation to the Motor Carrier Management

Information System ("MCMIS") database, which is maintained by Respondents

Federal Motor Carrier Safety Administration ("FMCSA") and the U.S. Department

of Transportation ("DOT").  Weaver challenged the citation in a Montana state

court of competent jurisdiction and the misdemeanor charge was dismissed.

Despite the fact that Respondents were apprised of the dismissal of Weaver's

citation, Respondents refuse to purge the alleged "violation" from its MCMIS

database and continue to disseminate the overturned violation to Weaver's

potential employers.

The ruling for which review is sought is the final agency action issued on

March 19, 2013, by FMCSA and DOT wherein Respondents denied Weaver's and

Petitioner OOIDA's demand that FMCSA purge all data from its MCMIS

databases related to Weaver's citation which had been dismissed by the Montana

state court.  The denial of this demand constituted final agency action by

Respondents under 49 U.S.C. § 31150.  Respondents' final agency action was

attached to the Petition for Review, but has not been published in the Federal Register.

**RELATED CASES**

The case on review was not previously before this Court, or any other court. A substantially similar case, involving OOIDA and three other drivers raising similar issues, is currently pending before the U.S. District Court for the District of Columbia, in *Owner-Operator Indep. Drivers Association, Inc. v. LaHood*, No. 12-1158 (BAH) (July 13, 2012) *("Data Qs I")*. In that case the Defendants moved to dismiss the complaint on the grounds that the claims raised fall within the exclusive jurisdiction of the courts of appeals under the Hobbs Act, 28 U.S.C. § 2342(3)(A). That motion is currently pending before the district court.

**B.      CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioners Fred Weaver, Jr. and Owner-Operator Independent Drivers Association, Inc., state that they have no parent companies, subsidiaries (including wholly-owned subsidiaries), or affiliates that have issued shares to the public.

## **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

CORPORATE DISCLOSURE STATEMENT ...................................... iii

TABLE OF CONTENTS........................................................iv

TABLE OF AUTHORITIES ................................................. vi

GLOSSARY OF ABBREVIATIONS ............................... xii

JURISDICTIONAL STATEMENT ..........................................1

ISSUES PRESENTED FOR REVIEW ....................................1

STATEMENT OF FACTS ...................................................2

SUMMARY OF THE ARGUMENT ....................................13

PETITIONERS HAVE STANDING....................................15

STANDARD OF REVIEW ..................................................16

ARGUMENT ...................................................................17

I.   THE PETITION DOES NOT SEEK REVIEW OF A RULE, REGULATION OR FINAL ORDER WITHIN THE MEANING OF THE HOBBS ACT ...............................................................17

     A.  General Jurisdictional Considerations ...............................17

     B.  The Wrongful Actions Complained of Do Not Challenge the Promulgation or Validity of Rules or Regulations ...........................20

     C.  Not Every Final Agency Action Is a Final Order Reviewable Under the Hobbs Act.......................................................23

II.    PETITIONERS' CLAIMS ARE MERITORIOUS ......................................25

    A.   Respondents Have Failed In Their Duty to Ensure Accuracy ...........25

    B.   Respondents Exceeded Their Statutory Authority By Releasing Inspection Reports Covering Any Matters Other Than Serious Driver-Related Violations ................................................................30

    C.   Respondents' Delegation to the States of the Statutory Responsibility for Data Accuracy and Correction is Not in Accordance with Law .......................................................................35

CONCLUSION ......................................................................................41

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*Am. Petroleum Inst. v. S.E.C.*,
   714 F.3d 1329 (D.C. Cir. 2013)............................................................11

*\*American Trucking Associations Inc. v. Interstate Commerce Commission*,
   697 F.2d 1146 (D.C. Cir. 1983)........................................... 9, 15, 19, 20

*Aulenback v. FHWA*,
   103 F.3d 156 (D.C. Cir. 1997)..............................................................18

*Barnhart v. Sigmon Coal Co., Inc.*,
   534 U.S. 438 (2002) ............................................................................25

*Cassara v DAC Services*,
   276 F.3d 1210 (10th Cir. 2002) ...........................................................29

*Fund of Animals v. Kemthorne*,
   538 F. 3d 124 (2d  Cir. 2008) ...............................................................40

*Int'l Brotherhood of Teamsters v. United States Dept. of Transportation*,
   714 F.3d 580 (D.C. Cir. 2013)..............................................................16

*Koropoulos v. The Credit Bureau, Inc.*,
   734 F.2d 37 (D.C. Cir. 1984)................................................................29

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .............................................................................16

*National Automobile Dealers Association v. FTC*,
   670 F.3d 268 (D.C. Cir. 2012)..............................................................11

*Owner-Operator Independent Drivers Association, Inc. v. Peña*,
   996 F.2d 338 (D.C. Cir. 1993).......................................................... 11, 18

*Owner-Operator Independent Drivers Association of America, Inc. v. Skinner*,
   1989 WL 110497 (N.D. Cal. 1989).......................................................10

*Owner-Operator Independent Drivers Association of America, Inc. v. Skinner*,
    931 F.2d. 582 (9th Cir. 1991). ...........................................................................11

*Pinner v. Schmidt*,
    805 F.2d 1258 (5th Cir. 1986) .........................................................................29

*U.S. Telecomm Ass'n v. F.C.C.*
    359 F.3d 554 (D.C. Cir. 2004)...........................................................................39

## <u>Statutes</u>

5 U.S.C. § 552a .................................................................................... 21, 27

5 U.S.C. § 554-558...................................................................................23

5 U.S.C. § 558 ..........................................................................................23

5 U.S.C. § 703 ............................................................................................9

15 U.S.C. § 1681 ................................................................................. 21, 26

15 U.S.C. § 1681e(b) ...............................................................................27

28 U.S. C. § 1331 .......................................................................................9

28 U.S. C. § 1631 ............................................................................... 15, 41

28 U.S.C. § 2321(a) .................................................................................19

28 U.S.C. § 2342 ......................................................................... 10, 18, 24

28 U.S.C. § 2342(3)(A)............................................................ 1, 8, 9, 16, 18

28 U.S.C. § 2342(5) .................................................................................19

28 U.S.C. § 2344 ......................................................................................24

49 U.S.C. § 113(f) ....................................................................................39

49 U.S.C. § 113(g) ...................................................................................39

49 U.S.C. § 322(b) ........................................................................39

49 U.S.C. § 351 .............................................................................11

49 U.S.C. § 351(a) ........................................................................18

49 U.S.C. § 521 (b)(5)(A) ............................................................31

49 U.S.C. § 521 (b)(5)(B) ............................................................31

49 U.S.C. § 1653(c) ............................................................... 11, 18

49 U.S.C. § 20114(c) ....................................................................25

49 U.S.C. § 31100 ...........................................................................5

49 U.S.C. § 31101(b) ....................................................................38

49 U.S.C. § 31102 ...........................................................................5

49 U.S.C. § 31102(b)(Q) .............................................................1, 6

49 U.S.C. § 31102(b)(2)(Q)(i) ....................................................38

49 U.S.C. § 31102(b)(2)(Q)(ii) ...................................................38

49 U.S.C. § 31106(a)(2) ...............................................................35

49 U.S.C. § 31106(a)(3) ...............................................................35

49 U.S.C. § 31106(a)(3)(A) ...........................................................1

49 U.S.C. § 31106(a)(4)(A) .........................................................16

49 U.S.C. § 31106(a)(3)(F) ..................................... 1, 5, 16, 20, 26, 27

49 U.S.C. § 31106(a)(3)(G) ................................... 2, 17, 25, 26

49 U.S.C. § 31106(e) .............................................. 2, 5, 14, 21

viii

49 U.S.C. § 31136(a) ...................................................................................5

49 U.S.C § 31150 ...................................................................................... ii

49 U.S.C. § 31150(a) .............................................................2, 6, 14, 17, 25, 30

49 U.S.C. § 31150(a)(1)........................................................................21, 35

49 U.S.C. § 31150(a)(3)........................................................................21, 35

49 U.S.C § 31150(b) .................................................................25, 26, 27, 36

49 U.S.C § 31150(b)(1) ...............................................1, 2, 5, 16, 17, 21

49 U.S.C § 31150(b)(4) ................................................. 2, 5, 6, 17, 26

49 U.S.C § 31150(d) ................................................. 6, 21, 30, 31, 35

Mont. Code § 61-10-141 ........................................................................3

Mont. Code § 61-10-141(1) ...................................................................2

Mont. Code § 61-10-145(4) ...................................................................2

## Regulations

49 C.F.R. § 350.101 ................................................................................5

49 C.F.R. § 350.201 ...............................................................................28

49 C.F.R. § 350.211(11) .......................................................................38

49 C.F.R. § 350.215 ........................................................................ 28, 38

49 C.F.R. § 350.331 ...............................................................................28

49 C.F.R. § 350.335 ...............................................................................28

49 C.F.R. § 386.2 ...................................................................................23

49 C.F.R. § 386.61 ...................................................................23

49 C.F.R. § 386.61(a) ..............................................................23

49 C.F.R. § 386.61(b) ..............................................................23

49 C.F.R. § 386.62-66 .............................................................23

49 CFR § 386.67 ......................................................................23

49 CFR § 386.72 ......................................................................32

49 C.F.R. § 386.72(a) ..............................................................31

49 C.F.R. § 386.72(b) ..............................................................31

49 C.F.R. § 390.5 .....................................................................32

49 C.F.R. § 392.2 .......................................................................3

49 C.F.R. § 392.4 .....................................................................32

49 C.F.R. § 392.5 .....................................................................32

49 C.F.R. § 392.5(c) .................................................................32

49 C.F.R. § 392.9a ...................................................................32

49 C.F.R. § 395.12(b)(2) ..........................................................32

49 C.F.R. § 395.13 ...................................................................32

49 C.F. R. § 395.13(b) .............................................................32

49 C.F.R. § 396.9 .....................................................................32

49 C.F.R. § 398.8(c) .................................................................32

x

## **Public Law**

Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for
Users or "SAFETEA–LU",
  Pub. L. 109–59, 119 Stat 1144, Title IV, § 4125(a) (August 10, 2005) .............18

## **Rules**

D.C. Cir. Rule 26.1 ................................................................................ iii

Fed. R. App. P. 26.1 ............................................................................... iii

# GLOSSARY OF ABBREVIATIONS

DATAQs                Procedure used by drivers to correct inaccurate
                      information in MCMIS data

FMCSA                 Federal Motor Carrier Safety Administration

FMCSR                 Federal Motor Carrier Safety Regulations

MCMIS                 Motor Carrier Management Information Systems

MCSAP                 Motor Carrier Safety Assistance Program

OOIDA                 Owner-Operator Independent Drivers Association, Inc.

PSP                   Pre-employment Screening Program

RDR                   Request for Data Review

USDOT                 United States Department of Transportation

## **JURISDICTIONAL STATEMENT**

Petitioners challenge Respondents' final agency action dated March 19, 2013 approving denial of Weaver's request to correct data about him under a program created by 49 U.S.C. § 31102(b)(Q) and known as DataQs.  Respondents' final agency action was not published in the Federal Register.  A protective Petition for Review was filed on May 10, 2013, within 60 days of final agency action.  On June 26, 2013, this Court entered an order directing that Petitioners address any jurisdictional issues in their merits brief.  Doc. # 1443482.  If this Court has jurisdiction, that jurisdiction rests upon 28 U.S.C. § 2342(3)(A).

## **ISSUES PRESENTED FOR REVIEW**

a) Whether Respondents' final agency action was a rule, regulation or final order subject to review under 28 U.S.C. § 2342(3)(A).

b) Whether Respondents' retention and continued  reporting that Weaver violated the law following Weaver's exoneration by a court of competent jurisdiction violated 49 U.S.C. §§ 31106(a)(3)(F), 31106(a)(4)(A) and 31150(b)(1),  which requires Respondents to ensure that any records maintained  in FMCSA's database and disseminated through its Pre-Employment Screening Program are accurate, and whether Respondents' denial of Weaver's request that the report of his alleged violation be purged violated Respondents' duty to establish and

1

implement a system to correct inaccurate data under 49 U.S.C. §§

31106(a)(3)(G) and 31150(b)(4).

c) Whether Respondents' dissemination of Weaver's purported "violation,"

exceeded Respondents' statutory authority under 49 U.S.C. § 31150(a),

which limits dissemination of inspection reports to "serious" driver-

related safety inspection reports.

d) Whether Respondents' delegation of their statutory responsibilities

under 49 U.S.C §§ 31106(e) and 31150(b)(1) and (4) to state

enforcement agencies was in excess of Respondents' statutory authority.

## STATEMENT OF FACTS

**Petitioners**

Petitioner Fred Weaver is an over-the-road truck driver.  On or about June

29, 2011, Weaver was given a citation (MCS DOT 530 C 90729) by the State of

Montana for allegedly failing "to obey direction to be weighed," in violation of

Mont. Code § 61-10-141(1), a misdemeanor offense[1].  Joint Appendix "JA" #1.

Mont. Code § 61-10-141(1) provides:  "The peace officer, officer of the highway

patrol, or employee of the department of transportation may require that the vehicle

be driven to the nearest stationary scales or engineered site for use of portable

---

[1]  Mont. Code § 61-10-145(4)

2

scales if those stationary scales or an engineered site is within 2 miles." (Mont. Code Ann. § 61-10-141.)

Contemporaneous with the issuance of the citation, a record of the inspection report was placed in FMCSA's MCMIS database and was available for dissemination to potential employers of Weaver under Respondents' pre-employment screening program ("PSP"). JA# 2-4 . Weaver's "PSP Detailed Report," issued by FMCSA, states the following:

| Date | DOT # | Driver Name | Report State | # of Viol |
|------|-------|-------------|--------------|-----------|
| 06/29/2011 | 438639 | Weaver, Fred | MT | 1 |
| | | Driver Violation: 392.2C | Failure to obey traffic control device | |

JA# 3. 49 C.F.R. § 392.2, titled "Applicable operating rules," provides "[e]very commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated."

Weaver challenged the citation in the Justice Court of Toole County, State of Montana. JA# 7. Justice of the Peace Sherrie Murphy, in an Order entered January 23, 2012, dismissed Weaver's citation, stating that "It Is Hereby ORDERED that the offence of Fail to Obey Direction to be Weighed, a misdemeanor, in violation of Montana Code Annotated § 61-10-141(1)(2009) is dismissed without prejudice." JA# 7.

On or about March 15, 2013, Weaver, with the assistance of Petitioner Owner-Operator Independent Drivers Association, Inc., (OOIDA), filed a request

for data review "RDR" through Respondents' DataQs system requesting that Weaver's alleged violation be removed from the MCMIS database.  JA# 11-12. Petitioners, in their RDR, informed Respondents that the citation issued to Weaver was dismissed by the Montana court and included as supporting documentation, a copy of the Montana court's Order of Dismissal.  JA#11, JA#7.  Col. Daniel Moore, Enforcement Chief (MT DOT MCSAP), in a response to Petitioner's RDR, refused to remove the "violation" from the MCMIS database (and, therefore, from Weaver's PSP Report).  JA# 12.  Col. Moore admonished Petitioners for filing their RDR and warned Petitioners that "[o]ur decision is our decision and any further argument will be turned over the FMCSA as a violation of the DQ processes."  JA# 12.

In addition to the Montana "violation," Weaver's PSP Report contains multiple entries of non-serious safety violations.  These include: (1) a violation recorded on September 3, 2010 for "inoperable required lamp;" (2) a violation recorded on March 28, 2011 for "no/defective lighting devices/ref/projected;" (3) a violation recorded on Oct. 11, 2011 for "State/Local Laws – Speeding 1-5 miles per hour over the speed limit;" and a violation recorded on Aug. 10, 2012 for "Failure to pay UCR fee."  JA# 2-3.

Petitioner OOIDA is a non-profit corporation organized under the laws of the State of Missouri with its place of business located in Grain Valley, Missouri.

*DataQs I* Complaint at 4; JA# 28.  The purpose of OOIDA is to represent the

interests of professional truck drivers and small business trucking companies

before federal and state agencies, courts and legislative bodies.  OOIDA has over

150,000 members residing in each of the fifty states.  JA# 28.

OOIDA is acting herein in a representative capacity seeking only declaratory

and injunctive relief.  The interests it seeks to protect are germane to the purpose

for which OOIDA exists.  JA# 28.

### Regulatory Setting

Respondents have regulatory authority over the safe operation of

commercial motor vehicles on the nation's highways.  49 U.S.C. § 31136(a).

Individual state enforcement agencies receive grants from the USDOT under the

Motor Carrier Safety Assistance Program (MCSAP) in exchange for agreements to

incorporate federal safety regulations into state law and to enforce those federal

standards.  49 U.S.C. §§ 31100, 31102; 49 C.F.R. § 350.101 et. seq.  States

participating in the MCSAP program report data about their inspections of trucks

and drivers to FMCSA which maintains a database of this activity known as Motor

Carrier Management Information System or "MCMIS."  The Secretary is

responsible for ensuring the accuracy of this data.  49 U.S.C. §§ 31106 (a)(3)(F),

(e);  31150 (b)(1), (4).  The Secretary is required to provide a procedure for drivers

to correct inaccurate information in a timely manner.  49 U.S.C. §§ 31106(e) and

31150(b)(4).  The Secretary must require states receiving grants under MCSAP to participate in the federal data correction program, 49 U.S.C. § 31102(b)(Q).  No statute authorizes the Secretary to delegate his statutory responsibility for accuracy to the states participating in MCSAP.  The procedure adopted by Respondents to correct inaccurate information included in the MCMIS database is called the "DataQs" system.  *Id.*  "Requests for Data Review" under the DataQs system are referred to as "RDRs."

The Secretary is authorized to provide a subset of the MCMIS data regarding drivers to persons conducting pre-employment screening of truck drivers.  49 U.S.C. § 31150(a).  The subset of data authorized for dissemination under this pre-employment screening program (PSP) is limited to accident reports, inspection reports that contain no driver-related safety violations, and "serious driver-related safety violation inspection reports."  *Id.*  To date, the Secretary has not made any specific determination as to what constitutes a serious driver-related safety violation as he is required to do by statute.  *Id.* at § 31150(d).

**Respondents' "DataQs" System**

In January 2011, FMCSA published the "DataQs User Guide and Manual" ("User Guide").  JA# 57-135.  According to the User Guide, "while FMCSA maintains MCMIS and disseminates the data contained therein, each State's lead MCSAP agency is considered the 'owner' of all CMV crash and inspection data

6

generated by its agency and/or sub-agencies." User Guide at 12, JA# 68. The

User Guide then states that "[i]f a State Enforcement Official cites a driver for a

violation, writes a citation, and then later the citation is dismissed by a judge, the

State does not have to remove the violation from the inspection report."

User Guide at 27, JA# 83.

FMCSA has disseminated additional materials regarding its DataQs system.

A "DataQs Fact Sheet" published by FMCSA states that "[t]he system does not

require any changes in Federal or State procedures for resolving data challenges,

but will simplify the existing process and provide a mechanism for FMCSA, the

States and the public to better track these data challenges. The system does not

allow or require FMCSA intervention in the State data correction process."

JA # 16.

FMCSA published, on April 14, 2010, a "Privacy Impact Assessment" of its

Pre-Employment Screening Program. JA # 136. According to this document,

"[t]he PSP system is currently administered by National Information Technologies,

LLC (NIC), an FMCSA contractor." JA# 137. Under the heading "How PSP

Ensures Data Accuracy," the report states that "[t]he MCMIS data extracts

transmitted monthly to NIC for inclusion in PSP contain the most current crash and

inspection data available in MCMIS. NIC is not permitted to alter or modify the

MCMIS data." JA# 139. The "Privacy Impact Assessment" also addresses "[h]ow

7

PSP provides redress."  After describing the DataQs system, the document states that "FMCSA is not authorized to correct state-level violation information. Challenges to state-level violation information are automatically directed to the applicable state for processing and resolution.  Additionally, FMCSA is not authorized to direct a State to change or alter MCMIS data for violations or inspections originating within a particular State(s)."  JA# 139.

The contract between FMCSA and NIC, under which NIC administers the PSP, states that "[t]he Government is responsible for the accuracy and completeness of the DIR [driver profile data]," and that "[t]he Government is responsible for correction of any data in the DIR."  JA# 154.  According to the contract, all of the driver-related data "shall at all times remain the property of the Government."  JA# 157.  The contract defines the term "serious driver-related violation" to mean "a violation by an operator of a commercial motor vehicle that the Secretary determines will result in the operator being prohibited from continuing to operate a commercial motor vehicle until the violation is corrected." JA# 166.

### Prior Procedural Rulings By This Court

The availability of direct review of final agency action by the U.S. Secretary of Transportation in this Court is limited to rules, regulations, and final orders. 28 U.S.C. § 2342(3)(A).   A person adversely affected or aggrieved by agency

*enforcement actions* must bring his claims in "district courts under so-called non-statutory review provision of the Administrative Procedures Act, 5 U.S.C. § 703 (second sentence)." *American Trucking Associations v. Interstate Commerce Commission*, 697 F.2d 1146, 1153 (D.C. Cir. 1983) (Scalia, J.)  The Department of Justice is currently seeking a different outcome in a very similar case now pending in district court in *DataQs I*.  *See* "Related Cases" Section, *supra* at iii.  Because of the uncertainty created by the government's position in the related district court proceeding, Petitioners filed their Petition for Review here as a protective matter. Petitioners question whether the review to which they are entitled should take place initially in federal district court, or through direct review by this Court under the Hobbs Act, 28 U.S.C. § 2342(3)(A).  Petitioners contend that the final agency action taken here involves *enforcement actions* reviewable first in federal district court under 28 U.S. C. § 1331 and does not constitute a rule, regulation or final order within the meaning of Section 2342(3)(A).

Petitioners sought permission to file a brief exceeding the normal page limit in support of a proposed Motion to Determine Jurisdiction.  On June 26, 2013 a motions panel of this Court denied Petitioners' motion for additional pages and instructed the parties to address any jurisdictional issues in their merits briefs. Doc. # 1443482.  The order of the motions panel places Petitioners in a peculiar position.  Petitioners must brief the merits of their claim while simultaneously

raising concerns over the jurisdiction of this Court to rule on those claims.  In any event, Petitioners will proceed here as instructed.

It is often the case that petitioners seek direct review in the courts of appeals in order to speed things up - bypassing initial review in the district courts.  It is a fair question then to ask why Petitioners here argue that this matter should go first to the district court.  The answer is that there is a compelling need to eliminate uncertainty and confusion as to the jurisdictional divide between this Court and district courts in matters where the Hobbs Act potentially applies.  Such uncertainty and confusion often delays and sometimes denies appropriate judicial review.

The Hobbs Act, 28 U.S.C. § 2342, is sometimes referred to as a trap for the unwary.  Petitioner OOIDA can testify first-hand to the accuracy of this description.  In 1989, OOIDA filed a challenge in federal district court in California to regulations promulgated by the Federal Highway Administration implementing random and post-accident drug testing of drivers.  Defendants moved to dismiss on the grounds that exclusive jurisdiction rested with the courts of appeals.  The district court denied the motion to dismiss, but certified the jurisdictional issue to the Ninth Circuit.  *Owner-Operator Independent Drivers Association of America, Inc. v. Skinner*, 1989 WL 110497 (N.D. Cal. 1989).  The Ninth Circuit reversed and held that exclusive jurisdiction over challenges to

agency regulations was vested in the court of appeals. *Owner-Operator Independent Drivers Association of America, Inc. v. Skinner*, 931 F.2d. 582 (9th Cir. 1991).

Two years after the *Skinner* decision by the Ninth Circuit, OOIDA challenged actions by the Secretary to administer a grant funding a pilot program allowing four individual states to test the effectiveness of random roadside drug and alcohol testing. OOIDA filed its challenge in this Circuit asserting that random roadside inspections violate important Fourth Amendment rights of drivers. The government did not contest jurisdiction. The D.C. Circuit took a narrow view of its Hobbs Act jurisdiction and, relying upon 49 U.S.C. § 1653(c) (now codified at 49 U.S.C. § 351), held that the functions performed by the Secretary in funding the pilot program were not transferred from the ICC in 1996 and were not therefore within the exclusive jurisdiction of the court of appeals. *Owner-Operator Independent Drivers Association, Inc. v. Peña,* 996 F.2d 338, 340-342 (D.C. Cir. 1993). OOIDA refiled its challenge in district court and later appealed to this Court. The appeal was dismissed as moot following the passage of time. The merits of OOIDA's challenge raising important Fourth Amendment issues were never resolved.

In *American Petroleum Institute v. S.E.C.,* 714 F.3d 1329 (D.C. Cir. 2013) this Court recently observed that "[i]n this Circuit, the normal default rule is that

11

persons seeking review of agency action go first to district court rather than to a court of appeals," 714 F. 3d at 1332, quoting *National Automobile Dealers Association v. FTC*, 670 F.3d 268, 270 (D.C. Cir. 2012) (internal quotation marks omitted).  Mindful of this default rule, and in recognition of the narrow view taken of its jurisdiction under the Hobbs Act in *Peña*, OOIDA and three of its member drivers recently filed a challenge to Respondents' DataQs program in the U.S. District Court for the District of Columbia.  *Owner-Operator Independent Drivers Assn,, Inc. v. U.S. Department of Transportation, et al.,* No. 12-1158(BAH) (D.D.C) (*"DataQs I"*).  The Plaintiffs there challenged the same conduct that is at issue in this case - including the government's refusal to purge "violations" from its MCMIS database where the underlying citations were dismissed by state courts of competent jurisdiction.  The government moved to dismiss on the ground that this Court has exclusive jurisdiction under the Hobbs Act.  *Id.  Defendants' Motion to Dismiss*, Doc. # 8 (Sept. 17, 2012).  Plaintiffs opposed the government's motion.  Plaintiffs also argued that, if the district court concluded that exclusive jurisdiction over their claims was in the court of appeals, the proper remedy would be to transfer the case rather than dismissing it.  *Id.  Plaintiffs' Opposition to Defendants' Motion to Dismiss,* Doc. # 10 (Oct. 19, 2012).  Briefing on the government's motion to dismiss was completed on November 19, 2012.  That motion is currently pending.  The Hobbs Act's provision governing review of

12

certain activities of the Secretary of Transportation deserves close scrutiny by this Court in order to remove uncertainty and to encourage timely review of agency action in the proper court.

## SUMMARY OF THE ARGUMENT

There is something profoundly troubling about an enforcement practice that reports to prospective employers that a potential employee has violated the law after a court of competent jurisdiction has dismissed the charges against him or has entered a verdict of not guilty.  Also troubling is an enforcement practice that ignores a statutory directive limiting dissemination of information to information about serious driver-related safety violations.  Including all regulatory infractions in a report that, by statute, may only include serious violations creates a mistaken impression for prospective employers – an impression that the Secretary of Transportation considers all low level regulatory infractions to raise serious safety concerns.  FMCSA's MCMIS database and the PSP reports generated from it are riddled with false reports of violations where drivers have been exonerated and reports of minor infractions masquerading as serious driver-related violations.

Congress has imposed upon Respondents the responsibility of ensuring the accuracy of driver safety records and correcting inaccuracies when they are identified.  FMCSA, in an effort to wash its hands of the mess in its safety records, unlawfully attempts to delegate its responsibility for accuracy to states

participating in the MCSAP program.  In direct contravention of congressional mandate, FMCSA baldly asserts that it has no legal authority itself to correct inaccurate reports by states who accept MCSAP grants on the condition of their cooperation on accuracy.  Judicial intervention, either by this Court or the district court, is urgently needed to correct this stunning abdication of regulatory responsibility.  Clear and accurate lines of responsibility in the dual federal / state approach to motor carrier safety enforcement must be drawn.

Petitioners have been adversely affected or aggrieved by agency enforcement policies that are in excess of, and /or contrary to, clear statutory requirements.  Standards of accuracy cannot tolerate the reporting of violations after drivers have been exonerated by courts of competent jurisdiction. Widespread dissemination to potential employers of relatively minor regulatory infractions in PSP reports that by law may only include serious violations violates 49 U.S.C. § 31150(a) and must be curtailed.  Respondents should not be allowed to avoid their responsibilities to ensure accuracy of driver safety records and to "implement a national motor carrier safety data correction system."  49 U.S.C. § 31106(e). FMCSA's failure to follow standards of accuracy established in the Fair Credit Reporting Act and the Privacy Act has produced fifty (50) different state standards none of which are tied to  federal privacy standards.  Finally, FMCSA must be disabused of the notion that it is powerless to do anything when states

which accept MCSAP grants refuse to purge inaccurate reports.

Judicial oversight is urgently needed.  But the Respondents' conduct implicates enforcement activity -- not rules, regulations or final orders. Jurisdiction to review enforcement activity lies in the district courts.  This Court provides initial review only over rules, regulations and final adjudicative orders. *American Trucking Associations, Inc., v. Interstate Commerce Commission,* 697 F.2d 1146, 1153 (D.C. Cir. 1983).

If this Court concludes that it has original jurisdiction, the Petition for Review should be granted, and a corrective order entered enjoining Respondents from disseminating Weaver's PSP Report to prospective employers as well as any and all other PSP reports of drivers containing non-serious driver safety violations and alleged violations that have been dismissed or overturned by courts of competent jurisdiction.  If this Court concludes that it does not have original jurisdiction, then this matter should be transferred to the U.S. District Court for the District of Columbia for further proceedings on the merits pursuant to 28 U.S.C. § 1631.

## PETITIONERS HAVE STANDING

Both Weaver and OOIDA have standing to pursue this action. As this Court recently held, "[t]o establish Article III standing, a plaintiff or petitioner must demonstrate that it has suffered injury in fact; that its injuries are fairly traceable to

15

the allegedly unlawful conduct and that a favorable ruling would redress its

injuries." *Int'l Brotherhood of Teamsters v. United States Dept. of Transportation*,

714 F.3d 580, 585 (D.C. Cir. 2013), citing *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560-61 (1992).  Here, Weaver has suffered injury in fact as his ability to find

employment is adversely affected by Respondents' failure to purge the MCMIS

database of Weaver's putative "violation."  OOIDA, a trade association, has

organizational standing "to seek injunctive relief if at least one of its members

would have standing and if the issue is germane to the organization's purpose.

*Teamsters*, 714 F.3d at 586.  In this case, OOIDA has standing because its

members, including Weaver, have been adversely affected or aggrieved by agency

action, and personnel from OOIDA regularly assist its members in submitting

challenges to correct inaccurate information in the MCMIS database called the

"DataQs" system.  *See* Declaration of Dale Watkins, ¶¶ 1-5, JA# 197-198.

## STANDARD OF REVIEW

Whether Respondents' final agency action was a rule, regulation or final

order subject to review under 28 U.S.C. § 2342(3)(A) presents an issue of law

subject to *de novo* review.

Whether Respondents' retention and continued  reporting that Weaver

violated the law following Weaver's exoneration by a court of competent

jurisdiction violated 49 U.S.C. §§ 31106(a)(3)(F), 31106(a)(4)(A) and 31150(b)(1),

which requires Respondents to ensure that any records maintained in FMCSA's database and disseminated through its Pre-Employment Screening Program are accurate, and whether Respondents' denial of Weaver's request that the report of his alleged violation be purged violated Respondents' duty to establish and implement a system to correct inaccurate data under 49 U.S.C. §§ 31106(a)(3)(G) and 31150(b)(4) presents an issue of law subject to *de novo* review.

Whether Respondents' dissemination of Weaver's purported "violation," exceeded Respondents' statutory authority under 49 U.S.C. § 31150(a), which limits dissemination of inspection reports to "serious" driver-related safety inspection reports presents an issue of law subject to *de novo* review.

Whether Respondents' unauthorized delegation of their statutory responsibilities under 49 U.S.C. § 31150(b)(1) and (4) to state enforcement agencies was in excess of Respondents' statutory authority presents an issue of law subject to *de novo* review.

## **ARGUMENT**

## I.    **THE PETITION DOES NOT SEEK REVIEW OF A RULE, REGULATION OR FINAL ORDER WITHIN THE MEANING OF THE HOBBS ACT**

### A.    **General Jurisdictional Considerations**

The starting point for any jurisdictional inquiry under the Hobbs Act is the language of the statute itself. The current language of the Hobbs Act, as it applies

to the Secretary of Transportation, was enacted in Pub.L. 109-59, Title IV, §

4125(a), August 10, 2005, 119 Stat. 1738.  It provides:

> § 2342. Jurisdiction of court of appeals
>
> The court of appeals (other than the United States Court of Appeals
> for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside,
> suspend (in whole or in part), or to determine the validity of—
>
> * * * *
>
> **(3)** all rules, regulations, or final orders of—
> **(A)** the Secretary of Transportation issued pursuant to section 50501,
> 50502, 56101-56104, or 57109 of title 46 or pursuant to part B or C of
> subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315,
> of title 49
>
> * * * *

28 U.S.C. § 2342(3)(A).  The claims raised by Petitioners arise under subchapter

III of chapter 311, and chapters 313 and 315.

Prior to the 2005 Amendment to the Hobbs Act, cases dealing with

jurisdiction of the courts of appeals over petitions from agency action under the

Motor Carrier Act required an examination of 49 U.S.C. § 1653(c) (1993)

(currently 49 U.S.C. § 351(a) (2012)) to determine whether the powers and

functions exercised by the Secretary were transferred to him in the DOT Act of

1966.  Compare *Owner-Operator Independent Drivers Association, Inc. v. Peña*,

*supra,* with *Aulenback v. FHWA*, 103 F.3d 156 (D.C. Cir. 1997).  In 2005 all of the

Secretary's powers and functions related to motor carrier safety were specifically

enumerated for the first time in the Hobbs Act irrespective of whether individual

powers and functions had been transferred to the Secretary from the ICC in 1966.
Accordingly, since 2005 it has become unnecessary to trace the origin of those
powers and functions back to the ICC.

The Petitioners here do not seek to enjoin or set aside or suspend or
determine the validity of a rule, regulation or final order.   They do, however, raise
serious and important questions about the enforcement practices of the Secretary
and FMCSA.  Such a challenge must be adjudicated first in district court.  In
*American Trucking Associations Inc. v. Interstate Commerce Commission*, 697
F.2d 1146 (D.C. Cir. 1983) (*ATA v. ICC*) Judge (now Justice) Scalia reviewed a
challenge to an ICC order adopting a rule implementing a provision of the Motor
Carrier Act of 1980.  Justice Scalia's opinion rejected the petitioners' demand to
have a rule of the ICC enjoined or suspended pursuant to 28 U.S.C. §§ 2321(a) and
2342(5) (1976).  This Court had no problem finding that it had subject matter
jurisdiction under the Hobbs Act to review the ICC's rule.  Petitioners' demand for
relief went further, however, and sought review of what they believed was
inadequate enforcement by the ICC of the rule as promulgated.  Then Judge Scalia
rejected that portion of petitioners' claim for relief finding that jurisdiction of such
claims resided in district court:

> But raising the issue of *adequacy of enforcement* in a rulemaking
> proceeding, and addressing it in the statement of basis and purpose
> accompanying adoption of the rule or in the denial of petition for
> reconsideration, does not convert that issue into a "rule, regulation, or

19

> order." Any relief to which Petitioners are entitled with regard to that
> complaint must be sought, not in courts of appeals under the special
> provisions for review of certain ICC action, but in district courts under
> the so-called nonstatutory review provision of the Administrative
> Procedure Act, 5 U.S.C. § 703 (second sentence).

697 F.2d at 1153 (emphasis added).  So too, in this case, Petitioners challenge the

lawfulness of Respondents' implementation of their statutory responsibilities

outside of the context of a challenge to any specific rule, regulation or final order.

Such challenges must be lodged initially in district court.

### B.  The Wrongful Actions Complained of Do Not Challenge the Promulgation or Validity of Rules or Regulations

The FMSCA has issued no "rule" or "regulation" regarding the PSP program

at issue in this case.  There is no rule or regulation promulgated by the FMCSA or

the Secretary of Transportation, which Petitioners seek to enjoin or set aside.

First, Weaver complains that Respondents have failed in their duties to

ensure accuracy of safety enforcement data.  State enforcement actions are

identified in the MCMIS database as violations before drivers have had a chance to

defend themselves in court as well as after charges have been dismissed or not

guilty verdicts rendered.  Petitioners challenge the appropriateness of this

*enforcement practice*.

Respondents are required by statute to ensure the accuracy of data

maintained in the MCMIS database.  Thus, 49 U.S.C. § 31106(a)(3)(F) requires the

Secretary to develop and maintain data analysis programs that provide the means

to ensure to the maximum extent practical that all the data is complete, timely, and accurate across all information systems.  Section 31106(e), requires that the Secretary develop policies consistent with Federal information laws and regulations when making data available.  Under this provision, before providing access to MCMIS data, the Secretary must ensure that release would be in accordance with the Fair Credit Reporting Act (15 U.S.C. § 1681 et. seq.) and all other applicable Federal law.  This would include compliance with the Privacy Act. 5 U.S.C. § 552a.   This requirement is repeated in 49 U.S.C. § 31150(b)(1) with respect to the PSP program specifically.  Respondents' own documents acknowledge this responsibility.  Webinar Transcript at 4, Slideshow at 5, 13, JA# 204, 209, 211.  Respondents' failure to satisfy statutory standards of accuracy is not based upon the promulgation of any rule, regulation or final order.  If anything, Weaver could very well complain because of Respondents' neglect in promulgating proper rules and regulations implementing their statutory obligations regarding accuracy of data.

Second, by statute Respondents are only authorized to release motor vehicle accident reports and serious driver-related safety violation inspection reports under the PSP.  49 U.S.C. § 31150 (a)(1), (3).  The Secretary is required to identify violations that constitute "serious driver-related violation[s]."  *Id*. at § 31150(d). Weaver complains that the Secretary has made no specific determination of what

constitutes a serious driver-related safety violation and that the violation of which

he is accused (failure to pull into a weigh station) should not have been included in

his PSP report.  Nor should several of the other non-serious violations identified

above have been shown in his PSP report.  Again, Weaver does not complain here

about any rule, regulation or final order that would serve as the basis of Hobbs Act

jurisdiction.  Weaver complains about the failure of the Secretary to identify

serious driver-related safety violations by issuing a rule, regulation or final order.

Again, Respondents' own documents show that it follows a practice of disclosing

inspection reports identifying "violations" that have never been determined to be

serious.  *See* merits analysis *infra* at 25-30.

   Third, Weaver complains that the Respondents have improperly delegated

their data correction responsibilities under DataQs to states participating in the

MCSAP program.  FMCSA's DataQs User Guide states plainly:

> FMCSA considers the State's determination of the validity of an
> RDR [request for data review] as the final decision on the RDR.
> FMCSA will not unilaterally change state records without state
> consent.

JA# 77. Weaver's DataQs file shows that the final entry on his RDR was: "Closed-

No Action Taken."  Petition for Review, Attachment.  FMCSA's User Guide

explains the meaning of this final entry:

> The RDR was closed and no action was taken based on the totality
> of evidence available to, and reviewed by, the State DataQs analyst.
> The requestor's profile will remain unchanged.  However, the State

should provide the requestor with a response that includes sufficient information to support the State's determination and inform the requestor why their RDR was denied.  JA# 85.

Petitioners raise an issue related to improper delegation by Respondents to state authorities operating under MCSAP grants.  Again, this involves *enforcement action* -- not a rule, regulation or final order.

### C.    Not Every Final Agency Action Is A Final Order Reviewable Under the Hobbs Act.

FMCSA's own regulation defines Final Agency Order for the purposes of direct review by federal courts of appeals.  49 C.F.R. at Part 386.  Part 386 governs formal administrative proceedings used to resolve contested claims in conformity with the Administrative Procedures Act, 5 U.S.C. § 554-558.  49 C.F.R. § 386. 2 (Definition – Administrative Adjudicaiton).  Final Agency Order is also defined in section 386.2 to mean final agency action by FMCSA which became the Final Agency Order pursuant to § 386.61.  Section 386.61(a) and (b) establish the rules of finality for the determinations of an Administrative Law Judge or a Hearing Officer. Section 386.62-66 covers the administrative appeal process for agency adjudications.  Section 386.67 covers direct judicial review of an administrative adjudication by a U.S. Court of Appeals.

The actions taken by Respondents with respect to this administration of DataQs challenges bear no relationship to the formal administrative adjudications defined by FMCSA's regulations and selected for direct view by the courts of

appeals.  Likewise, final agency action taken by Respondents here bears no

likeness to a final order of the kind contemplated by the Hobbs Act.  The Hobbs

Act states that "[o]n the <u>entry</u> of a final order reviewable under this chapter, the

agency shall promptly give notice thereof by service or publication <u>in accordance</u>

<u>with</u> <u>its</u> <u>rules</u>."  28 U.S.C. § 2344 (2012) (emphasis added).  Here, the FMCSA did

not provide notice of a final order in accordance "with its rules" because there was

no final adjudicative order issued by FMCSA under Part 386 of its regulations.

The "final decision" on Weaver's RDR did not come in the form of "final order"

by FMCSA, but rather in a final determination by officials of the State of Montana

which the agency merely rubber stamped.  FMCSA's acceptance of the final

substantive determination by the State of Montana did, however, constitute final

agency action for the purposes of APA review.

     The Hobbs Act  distinguishes between "final orders" and "final agency

action."  In 28 U.S.C. § 2342(1)-(6) (2012), Congress gives the courts of appeals

exclusive jurisdiction to review "final orders" issued by the FCC, the Secretary of

Agriculture, the Secretary of Transportation, the Atomic Energy Commission, the

Surface Transportation Board and those made under the Fair Housing Act.  By

contrast, Section 2342(7) gives the courts of appeals exclusive jurisdiction to

review "all final agency actions described in section 20114(c) of title 49."  Thus,

Congress recognized a distinction between "final orders" and "final agency action"

when it crafted the Hobbs Act.  It provided exclusive review of "final agency actions" under 49 U.S.C. § 20114(c), a provision limited to railroad safety.  Here, Petitioners' claims do not involve any final agency action involving railroad safety and are therefore beyond the reach of the single provision within the Hobbs Act dealing with review of "final agency actions."

"[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452 (2002) (internal quotations omitted).  Applying this maxim to the Hobbs Act, Congress recognized the distinction between "final orders" and "final agency action" when it crafted the Hobbs Act, and it provided exclusive review of "final agency actions" only to those involving railroad safety.

## II.    PETITIONERS' CLAIMS ARE MERITORIOUS

### A.    Respondents Have Failed In Their Duty to Ensure Accuracy

In 49 U.S.C § 31106(a)(3)(G) and 31150(a) and (b), Congress explicitly undertook to protect commercial motor vehicle drivers (prospective employees) from the damaging consequences of  inaccurate safety records by limiting the types of information that could be reported, by requiring accuracy of that data, and by requiring the Secretary to establish and implement a national motor carrier safety

data correction system.

In operating its commercial motor vehicle safety information system, the Secretary "shall develop and maintain… data analysis capacity and programs that provide the means to**… ensure, to the maximum extent practical, all the data is** complete, timely, and **accurate** across all information systems and initiatives..." 49 U.S.C. § 31106(a)(3)(F).   (Emphasis added).  The resulting database is the "Motor Carrier Management Information System" ("MCMIS").  Congress has also authorized a limited subset of data from MCMIS to be made available to potential employers under the PSP program.  For the PSP system, Section 31150(a) provides for the reporting of only "(1) commercial motor vehicle accident reports; (2) inspection reports that contain no driver-related safety violations; and (3) serious driver-related safety violation inspection reports."  In two applicable statutes, Congress imposed upon the Secretary a duty to provide and implement a procedure to correct data disseminated in the PSP system.  49 U.S.C. §§ 31106(a)(3)(G) and 31150(b)(4).

Under the PSP program, Congress added to the Secretary's responsibilities for accuracy by also requiring that "the Secretary shall-- (1) ensure that any information that is released… will be in accordance with the Fair Credit Reporting Act (15 U.S.C. 1681 *et seq*.) and all other applicable Federal law…." 49 U.S.C. § 31150(b).   This latter provision implicitly incorporates by reference the provisions

of the Privacy Act, 5 U.S.C. § 552a.

The Fair Credit Reporting Act ("FCRA") provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added).

The Privacy Act provides: "(e) Each agency that maintains a system of records shall… (5) maintain all records which are used by the agency in making any determination about any individual with **such accuracy**, relevance, timeliness, and completeness **as is reasonably necessary to assure fairness** to the individual in the determination;  (6) prior to disseminating any record about an individual to any person other than an agency… make reasonable efforts to assure that such records are **accurate, complete, timely, and relevant** for agency purposes…." 5 U.S.C. § 552a. (Emphasis added).  These PSP-specific requirements for accuracy are consistent with those associated with the creation of the underlying MCMIS database.  Compare 49 U.S.C. § 31106(a)(3)(F) and § 31150(b).

The source of the MCMIS data reporting these violations is primarily state law enforcement officials.  State law enforcement personnel conduct inspections of commercial motor vehicles and drivers under the MCSAP program.  MCSAP regulations require states, as a condition of receiving federal funds, to:

1) adopt the same safety criteria as set forth in the federal commercial motor vehicle regulations (49 C.F.R. §§ 350.201; 350.215; 350.331; 350.335);

2) undertake and report inspections of commercial motor vehicles (49 C.F.R. § 350.201(s));

3) utilize FMCSA dictated forms to record the observations during inspections  (49 C.F.R. § 201(h), (i), (m), and (o), and

4) report upon those inspections to the FMCSA for inclusion in the MCMIS database ((49 C.F.R. § 201(h), (i), (m), and (o)).

After conducting a motor carrier safety inspection, the state inspector reports the Code of Federal Regulation section number of the alleged violation to FMCSA's MCMIS database.  Under MCSAP, law enforcement personnel are agents of the FMCSA.  They are required by MCSAP rules to undertake inspections in accord with FMCSA standards and record on FMCSA-dictated forms using the FMCSR code sections.  They are required to submit timely, accurate data to FMCSA's databases.  They are required to participate in a system (DataQs) to correct data.  Although the states have many obligations for the submission of data to MCMIS, FMCSA has the legal responsibility and contractual authority at all times to enforce those provisions and cut off funding to non-compliant states.

FMCSA possesses, controls, and operates the MCMIS database and the data in it.  As shown above, FMCSA controls the structure of the database, e.g. what fields are available for what subject matter.  FMCSA dictates what FMCSR code

28

sections are used by state officials to input the database.  In short, the FMCSA establishes both the subjects which will be included in statements in MCMIS and the nomenclature used to describe those subjects.  If inaccuracy has been introduced by virtue of the definitional process supporting MCMIS statements, FMCSA is accountable for it.  More importantly, FMCSA is capable of purging inaccurate data.  FMCSA retains its duty for data accuracy and correction, even though it relies upon the states to submit the data to MCMIS.

"Accuracy" refers to the capacity of a meaningful, reasonably concrete statement to communicate to its reader with reasonable precision the knowledge of its author.  An accurate statement is meaningful, reasonably concrete, reasonably complete in its description, reasonably precise, and true.  An accurate statement does not tend to mislead; a tendency to mislead is the hallmark of an inaccurate statement.  *Cassara v. DAC Services*, 276 F.3d 1210, 1219-1221 (10th Cir. 2002); *Koropoulos v. The Credit Bureau, Inc*., 734 F. 2d 37 (D.C. Cir. 1984); *Pinner v. Schmidt,* 805 F.2d 1258 (5th Cir. 1986).

Reporting a state enforcement activity as a violation where the driver has been exonerated in court is simply inaccurate.  If no conviction, then no violation.  It is that simple.

Under no reasonable interpretation is it accurate for FMCSA to maintain data and to report under its PSP program that an individual such as Weaver

violated the law after a court of competent jurisdiction found the driver not guilty of the charged violation.  FMCSA violated its statutory duties for accuracy when it continued to maintain and report that Mr. Weaver violated the law in Montana.

FMCSA should revise its system so that violations reported into MCMIS are automatically removed when a charge is dismissed or a driver acquitted.  Until then, FMCSA also violates its statutory duty to establish and implement  a data correction system when it refused to delete from its database and cease the PSP reporting that a driver violated the law when, as Weaver did, the driver submits verifiable proof that the violation charged was dismissed.  The failure of FMCSA's DataQ's system to purge such inaccurate data is, by law, solely FMCSA's responsibility.

### B.     Respondents Exceeded Their Statutory Authority By Releasing Inspection Reports Covering Any Matters Other Than Serious Driver-Related Violations

49 U.S.C. § 31150(a) authorizes the Secretary to release under its PSP program only a subset of data maintained in its MCMIS database.  That subset includes (1) commercial vehicle accident reports, (2) inspection reports that contain no driver-related safety violations, and (3) serious driver-related safety violation inspection reports.  Subsection 31150(d) provides a critical definition:

> Serious driver-related safety violation defined. – In this section, the term "serious driver-related violation" means a violation by an operator of a commercial motor vehicle that the Secretary determines will result in the operator being prohibited from

> continuing to operate a commercial motor vehicle until the
> violation is corrected.

Weaver's PSP report contains inspection reports that do not identify serious driver-related safety violations. Page 2 of Weaver's PSP report identifies five violations but shows that he had no out-of-service violations; that is, no violations that resulted in a determination that he must discontinue operating the vehicle until the violation is corrected. JA# 3.

The Secretary has made no specific determination as required by § 31150(d) as to which violations constitute a serious driver-related violation. Without such a specific determination, the best one can do as a surrogate is to look at prior determinations as to what constitutes grounds for a driver out-of service order. The Secretary's statutory authority to require placing drivers out-of-service is limited to situations where an inspection establishes that the driver "poses an imminent hazard to safety." 49 U.S.C. § 521(b)(5)(A). "Imminent hazard" means any condition that "substantially increases the likelihood of serious injury or death if not discontinued immediately." 49 U.S.C. § 521(b)(5)(B). Implementing regulations are found at 49 C.F.R. § 386.72(a) and (b). The FMCSRs show that authorization to issue driver out-of-service orders has been very narrowly circumscribed. An "*out-of-service order* means a declaration by an authorized enforcement officer of a Federal, State, Canadian, Mexican, or local jurisdiction that a driver, a commercial motor vehicle, or a motor carrier operation is out of

service pursuant to 49 CFR 386.72, 392.5, 392.9a, 395.13, or 396.9, or compatible laws, or the North American Standard Out-of-Service Criteria." 49 C.F.R. § 390.5. The only violations identified by the Secretary as justifying a prohibition "from continuing to operate a commercial motor vehicle until the violation is corrected" are the following:

a.   Being under influence of alcohol, 49 C.F.R. § 392.4 and 392.5(c);

b.   Violating the hours of service regulations 49 C.F. R. § 395.13(b), (i);

c.   Failing to maintain a current record of duty status, 49 C.F.R. § 395.12(b)(2); and

d.   Driving unsafe equipment, 49 C.F.R. 49 C.F. R. § 396.9(c) and 398.8(c).

Thus, with regard to the PSP reporting of "violations," only findings of a) being under the influence of alcohol, b) exceeding hours of service limitations, c) failure to maintain current record of duty status, or d) driving unsafe equipment for which the driver is responsible, i.e. "driver-related unsafe equipment,"  are the only "serious driver-related safety violations" that the Secretary is authorized to report under the explicit provisions of § 31150.  The Secretary has no authority to release through the PSP program reports that are beyond the reach of the statutes' authorization — that is reports of ("non-serious") violations.  The FMCSA has ignored these constraints.

Weaver was cited for failing to stop at a scale, a citation that was dismissed

by the state court to which it was presented.  That alleged "violation" is not one justifying a prohibition "from continuing to operate a commercial motor vehicle until the violation is corrected."   Therefore, Weaver's alleged violation was not "serious," and should not have been reported by the Secretary through the PSP program.  Therefore, Mr. Weaver's alleged violation must be deleted from the MCMIS database.

FMCSA has publicly approved the routine disclosure of non-serious driver-related inspection reports through the PSP program.  Records published by Respondents on the internet show that it is FMCSA's practice to release all inspection reports under the PSP system without consideration of whether those reports deal with serious driver-related safety violations or rule.

On June 23, 2010 FMCSA conducted a Webinar to introduce its new PSP program and to inform interested parties of the benefits they would obtain from using this new service.  The Webinar also provided instructions on how to use the new system and how to navigate access to this system over the internet.  The transcript of this Webinar is located at JA# 203. The slides used in connection with this Webinar are located at JA# 208 to 213.

Participants in the Webinar were presented with a sample PSP report covering the activities of a fictitious driver named Katherine Jasenof.  JA# 205-206 at 6-7.  Ms. Jasenof's sample PSP report appears at JA# 212-213 at 20-21.  Note

that, like Weaver's report, the Jasenof PSP report identifies multiple inspections

(7) and violations (15) only one of which was an out-of-service violation.  JA#

212-213. Michael Johnsen, FMCSA's presenter at the Webinar, freely

acknowledged that the PSP report discloses multiple non-serious violations:

> Below that is the inspection activity, and this is again, the 3-year data and the crash data in the 5-year data. So here you get an inspection summary.  This is going to give you a nice overview of how many inspections the driver has had – and these are roadside inspections.  It will give you a summary of the vehicle inspections and any HazMat stuff.  Down at the bottom is your Out-of-service Rate, so that is probably what you will be looking at a lot here.  In this case, we have seven inspections, and there is only one Vehicle Out-of service inspections for 20% of Vehicle Out-of-service rate with five inspections there.
>
> *************
>
> You can see it continues listing the violations per inspection. Here we have a couple of simple ones of lamps not working. Then down below in the "Violation Summary," you see the violation numbers and the number of violations per violation citation and then the out-of-service violations for that. And here it is pretty easy to tell that the out-of-service violation was the flat tire or fabric exposed on the tire.  We think this is a great way to view the information, and we are really happy that NIC has been able to develop these forms to make this a very simple, easy way to look at it. We think you are going to find the system easy to use to gather the information that you need to make an educated decision about hiring a driver, and you as a driver to review your own records and to see the inspections that are associated with you. So, in a transparent environment, *you get to see what we are seeing*, and the motor carrier gets to see what your records are before they hire you onboard. (emphasis added).

JA# 207. The statement, "you get to see what we see" is telling.  The statute does

not authorize the release to the PSP program everything that is in the MCMIS

database.  But the practice is otherwise.

Weaver's report containing multiple non-serious violations is not unique to

him.  FMCSA is actively promoting its PSP program as the source of all inspection

reports on drivers, despite the limitations imposed by statute that restricts their

disclosure authority to accident reports and serious driver-related safety violation

inspection reports.  49 U.S.C. § 31150(a)(1)-(3) and (d).  FMCSA's enforcement

activities are clearly not in accordance with law.

> **C.  Respondents' Delegation to the States of the Statutory Responsibility for Data Accuracy and Correction is Not in Accordance with Law**

> **1.  Statutory Responsibility**

The responsibility to maintain the accuracy of data within the MCMIS

database and the PSP reports drawn from that data is imposed upon the Secretary

by statute. 49 U.S.C. § 31106(a)(2) and (3)  Section 31106(a)(3) prescribes in part:

> The Secretary shall develop and maintain under this section data
> analysis capacity and programs that provide the means to –
>
> ****
>
> **(F)** ensure, to the maximum extent practical, all the data is
> complete, timely, and accurate across all information systems
> and initiatives;
>
> **(G)** establish and implement a national motor carrier safety data
> correction system;

Section 31106(e) covers dissemination of information from this MCMIS

database:

> The Secretary shall develop a policy on making information available from the information systems authorized by this section and section 31309. The policy shall be consistent with existing Federal information laws, including regulations, and shall provide for review and correction of such information in a timely manner.

Federal information laws include the Fair Credit Reporting Act and the Privacy Act. When Congress enacted the PSP program it specified that dissemination of MCMIS records in PSP reports would be subject to the Fair Credit Reporting Act and the Privacy Act. 49 U.S.C. § 31150(b) provides:

> **Conditions on providing access.**--Before providing a person access to the Motor Carrier Management Information System under subsection (a), the Secretary shall--
>
> (1) Ensure that any information that is released to such person will be in accordance with the Fair Credit Reporting Act (15 U.S.C. 1681 et seq.) and all other applicable Federal Law;
>
> ***
>
> (4) Provide a procedure for the operator-applicant to correct inaccurate information in the System in a timely manner

Thus, the responsibility for data accuracy and correction of data falls squarely upon the Secretary.

## 2. FMCSA Has Repudiated its Responsibility for Data Accuracy and Data Correction.

FMCSA has unlawfully delegated its statutory responsibilities for the accuracy and correction of data in its MCMIS database. FMCSA's policy to delegate responsibility for the accuracy of data to the states is unequivocal. On April 14, 2010, FMCSA published a Privacy Impact Assessment on the PSP

program in which it made the following statement:

> FMCSA is not authorized to correct state-level violation information. Challenges to state-level violation information are automatically directed to the applicable state for processing and resolution. Additionally, FMCSA is not authorized to direct a State to change or alter MCMIS data for violations or inspections originating within a particular State(s).

Department of Transportation, Federal Motor Carrier Safety Administration

(FMCSA) Privacy Impact Assessment, Pre-Employment Screening Program (PSP)

at 4, April 14, 2010. JA# 139. Consistent with this statement, the FMCSA

"DataQs User Guide and Manual" dated January 2011 states:

> "2.32. Who Makes the Final Decision on an RDR [Request for Data Review]?": "FMCSA considers the State's determination of the validity of an RDR as the final decision on the RDR. FMCSA will not unilaterally change State records without State consent." JA# 89.

FMCSA cites to no authority to support its policy to delegate all final data

correction decisions to the states. It offers no explanation of how this delegation

can be reconciled with the Secretary's ultimate responsibility to ensure accuracy.

### 3. FMCSA has the Legal Responsibility and the Contractual Authority To Demand Accurate Data from the States.

FMCSA is flatly incorrect when it states that it does not have the authority to

change state data in FMCSA databases. By statute and its own rules implementing

the MCSAP program, FMCSA obligates the states to submit accurate data to it and

it has the authority to cut off funding to those states who do not comply.

Under 49 U.S.C. § 31101(b) (the MCSAP statute), the Secretary "shall prescribe procedures for a State to submit a plan under which the State agrees to assume responsibility for improving motor carrier safety… and the Secretary shall approve the plan if the Secretary decides it is adequate to perform the objectives of this section and the plan…[including] (Q) that the State has established and a program to ensure that—(i) accurate, complete, and timely motor carrier safety data is collected and reported to the Secretary and (ii) the State will participate in a national motor carrier safety data correction system prescribed by the Secretary. 49 U.S.C. § 31102(b)(2)(Q)(i) and (ii).

Under FMCSA rules implementing MCSAP, two of the twenty-five conditions that a state must meet to receive MCSAP funds are: 1) participation in "SAFETYNET" [the submission of inspection data], and 2) establishment of  "… a program to ensure accurate, complete, and timely motor carrier safety data are collected and reported, and ensure the State's participation in a national motor carrier safety data correction system prescribed by FMCSA." 49 C.F.R. § 350.20 (n) and (s).  A state must submit a certification to FMCSA of its compliance with these requirements.  49 C.F.R. § 350.211(11).   If the Secretary finds that a state does not comply with MCSAP requirements, the Secretary can make a finding of non-conformity, resulting in "immediate cessation of Federal funding..."  49 C.F.R. § 350.215.  Contrary to its statements in the DataQ's User Guide and Manual and

the PSP's Privacy impact statement, FMCSA requires states to submit accurate

data and participate in a data correction program, and it has regulatory and

contractual authority to enforce those requirements.  In summary, FMCSA has the

statutory duty and contractual power to insist that states provide accurate

information about drivers to its databases and to correct such data when wrong.

FMCSA's statements to the contrary have no legal support.

### 4. FMCSA's Action Constitutes an Unlawful Delegation of Statutory Responsibility

FMCSA's abdication of final decision making on questions of accuracy of

the data in its database, and its decision to permit a state to keep incorrect

information in FMCSA's database, is an unlawful delegation of the Respondents

statutory duties and powers. The Secretary's authority to delegate duties and

powers are limited to persons within the Department.  49 U.S.C. § 322(b).

Similarly, a duty or power conferred upon the FMCSA Administrator by statute

may only be delegated to another the Department when specifically provided by

law.  49 U.S.C. § 113(f) and (g).

The rule against federal agency delegation of its decision making authority

was stated clearly in *U.S. Telecom Ass'n v. F.C.C,* 359 F.3d 554 (D.C. Cir. 2004):

> We therefore hold that, while federal agency officials may sub delegate their decision-making authority to subordinates absent evidence of contrary congressional intent, they may not sub delegate to outside entities – private or sovereign-absent affirmative evidence of authority to do so.

39

359 F.3d at 566.  The scale of Respondents' actions in this case certainly satisfies

the definition of delegation.  *Fund of Animals v. Kempthorne,* 538 F.3d 124, 133

(2d Cir. 2008).   FMCSA's deference to the Montana State patrol for the final

decision over the accuracy of the information about Weaver contained in

FMCSA's databases and published in Weaver's PSP record is an unlawful

delegation of its responsibility for the accuracy of data about Weaver in its

databases.  FMCSA's failure to establish a standard or procedure that requires a

state to purge reports that a driver has violated the law after such an allegation was

dismissed by a court of competent jurisdiction is an unlawful delegation of its duty

to ensure that there is a system in place to correct such information.

## <u>CONCLUSION</u>

The Court should deny the Petition for lack of subject matter jurisdiction and transfer the case, pursuant to 28 U.S.C. § 1631, to the U.S. District Court for the District of Columbia.

Alternatively, if the Court finds that it does have jurisdiction over this matter it should grant the Petition and enjoin Respondents from disseminating through the PSP system any reports containing purported violations that have been dismissed or overturned by a court of competent jurisdiction and all PSP reports containing violations or non-serious driver-related violations.

Respectfully submitted,

*/s/ Paul D. Cullen, Sr.*
PAUL D. CULLEN, SR.
PAUL D. CULLEN, JR.
JOYCE E. MAYERS
The Cullen Law Firm, PLLC
1101 30th Street NW, Suite 300
Washington, DC 20007
Tel: (202) 944-8600
Dated: August 23, 2013          Fax: (202) 944-8611

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(C) and Cir. R. 32 (1) in that the brief contains 9, 276 words excluding those parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated:   August 23, 2013                    */s/ Paul D. Cullen, Sr.*
                                            Paul D. Cullen, Sr.
                                            *Counsel for Petitioner*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of August, 2013, an electronic copy of Petitioners' Opening Brief and the Joint Appendix, was served via CM/ECF system to all parties of record. In addition, two copies of the Petitioners' Brief and Joint Appendix will be mailed via Federal Express upon the individuals listed below:

Mark W. Pennak
Matthew Collette
U.S. Department of Justice Civil Division
950 Pennsylvania Avenue N.W.
Washington, DC 20530

Dated:  August 23, 2013                          */s/ Paul D. Cullen, Sr.*
                                                  PAUL D. CULLEN, SR.
                                                  DAVID A. COHEN
                                                  DANIEL E. COHEN
                                                  PAUL D. CULLEN, JR.
                                                  The Cullen Law Firm, PLLC
                                                  1101 30th Street NW, Suite 300
                                                  Washington, DC 20007
                                                  Tel: (202) 944-8600
                                                  Fax: (202) 944-8611

                                                  *Counsel for Petitioner*

# **ADDENDUM**

# ADDENDUM INDEX

## Federal Statutes

5 U.S.C. § 552a ......................................................................... **Add. 1**

15 U.S.C. § 1681e ..................................................................... **Add. 19**

28 U.S.C. § 2342 ....................................................................... **Add. 22**

28 U.S.C. § 2344 ....................................................................... **Add. 24**

49 U.S.C. § 521 ......................................................................... **Add. 25**

49 U.S.C. § 31100 ..................................................................... **Add. 31**

49 U.S.C. § 31102 ..................................................................... **Add. 32**

49 U.S.C. § 31106 ..................................................................... **Add. 37**

49 U.S.C. § 31136 ..................................................................... **Add. 41**

49 U.S.C. § 31150 ..................................................................... **Add. 44**

49 U.S.C. § 31309 ..................................................................... **Add. 46**

## Federal Regulations

49 C.F.R. § 386.2 ...................................................................... **Add. 49**

49 C.F.R. § 386.61 ..................................................................... **Add. 52**

49 C.F.R. § 386.72 ..................................................................... **Add. 53**

49 C.F.R. § 390.5 ...................................................................... **Add. 55**

49 C.F.R. § 392.2 ...................................................................... **Add. 64**

49 C.F.R. § 392.4 ...................................................................... **Add. 65**

49 C.F.R. § 392.5 ...................................................................... **Add. 67**

49 C.F.R. § 392.9a ..................................................................... **Add. 69**

49 C.F.R. § 395.13 ..................................................................... **Add. 70**

49 C.F.R. § 396.9 ...................................................................... **Add. 72**

49 C.F.R. § 398.8 ...................................................................... **Add. 74**

## **State Statutes**

Mont. Code § 61-10-141 ................................................................. **Add. 76**
Mont. Code § 61-10-145 ................................................................. **Add. 78**